FLEXBORROW LLC AND
THE VAULT AUTO GROUP, LLC,

Plaintiffs,

VERSUS

TD AUTO FINANCE LLC,

Defendant.
_____

**MEMORANDUM AND ORDER**
June 16, 2017
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Flexborrow LLC ("Flexborrow") and The Vault Auto Group, LLC ("Vault") (collectively, "plaintiffs") bring this action against defendant TD Auto Finance LLC ("TDAF" or "defendant"), alleging (1) a substantive violation of the Racketeer Influenced and Corrupt Organizations ("RICO") Act pursuant to 18 U.S.C. § 1962(c) and conspiracy to violate RICO pursuant to 18 U.S.C. § 1962(d); and (2) New York State law claims for lender liability and fraud.[1] Defendant now moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

For the reasons set forth below, the Court dismisses plaintiffs' RICO claims because plaintiffs have not (1) adequately alleged that defendant conducted or participated in the affairs of a RICO enterprise; (2) established either a closed-ended or open-ended pattern of racketeering activity; and (3) pled the underlying predicate acts for mail and wire fraud with the requisite particularity. The RICO conspiracy claim must also be dismissed because there is no plausible underlying substantive violation and because plaintiffs have not adequately alleged the existence of any agreement or intent by defendant to violate RICO. In addition, the Court declines, in its discretion, to exercise supplemental jurisdiction over plaintiffs' New York State law claims, which it dismisses without prejudice. Although it is unclear to the Court that plaintiffs can cure these pleading deficiencies, in an abundance of caution, it will allow plaintiffs an

---

[1] Counts 4 and 5 of plaintiffs' complaint also allege prima facie tort and aiding and abetting a breach of fiduciary duty under New York law. However, plaintiffs have consented to dismissal of those claims. (*See* Pls.' Opp'n Br., ECF No. 20, at 5 n.3.) The Court accordingly dismisses plaintiffs' claims for prima facie tort and aiding and abetting a breach of fiduciary duty.

opportunity to amend their complaint to attempt to allege a plausible RICO claim.

I. BACKGROUND

A. Factual Background

The Court takes the following facts from the complaint. ("Compl.," ECF No. 1.) The Court assumes these facts to be true for purposes of deciding this motion and construes them in the light most favorable to plaintiffs as the non-moving party.

The gravamen of plaintiffs' complaint is that defendant "knowingly and intentionally" participated in "funding the continued operations of a corrupt enterprise known as Emporio Motor Group LLC ('Emporio')," a foreign limited liability company that was engaged in the business of dealing in pre-owned exotic, high-end, classic, and collectible automobiles. (Compl. ¶¶ 1, 6.) Emporio's principal Afzal Khan ("Khan") was indicted on June 30, 2015 in the United States District Court for the District of New Jersey on wire fraud charges, and he is presently a fugitive from justice. (*Id.* ¶¶ 1, 7; Exhs. A and B.) The indictment alleges that, from in or about December 2013 through in or about September 2014, Khan defrauded his lenders and customers by failing to remunerate them for the sale of automobiles by Emporio. (*Id.* ¶ 4; Exh. B.)

Flexborrow is a domestic limited liability company principally engaged in the business of asset-based short-term lending. It regularly lends against exotic, high-end, classic, or collectible automobiles and will secure those loans by, *inter alia*, taking physical possession of the vehicles and their title documents. (*Id*. ¶¶ 3, 11.) Occasionally, to pay off its loans, Flexborrow will sell an automobile it has lent against to a dealer like Emporio with the understanding that the dealer will either sell the automobile for an agreed-upon price and remit the proceeds of the sale to Flexborrow, or return the vehicle to Flexborrow. (*Id.* ¶ 12.)

Vault is a domestic limited liability company principally engaged in the business of dealing in pre-owned exotic, high-end, classic, and collectible automobiles. (*Id.* ¶ 4.) It occasionally receives automobiles from customers on consignment to be sold for the customer at an agreed-upon price, for which Vault receives an agreed-upon commission. (*Id.* ¶ 13.) Like Flexborrow, Vault sometimes cosigns a vehicle to a dealer like Emporio with the understanding that the dealer will either sell the automobile for an agreed-upon price and remit the proceeds of the sale to Vault, or return the vehicle to Vault. (*Id.* ¶ 14.)

TDAF is a foreign limited liability company principally engaged in the indirect financing of automobiles for purchase. (*Id.* ¶ 5.) Plaintiffs allege that defendant utilized salespeople to solicit dealers like Emporio so that defendant could provide financing for automobiles sold by those dealers. (*Id.* ¶ 15.) Defendant purportedly entered into agreements with those dealers to provide financing and conducted commercially reasonable due diligence before approving those contracts, including analyzing a dealer's financial statements and reviewing pre-existing liens on the subject vehicle. (*Id.* ¶¶ 18-19.)

In their complaint, plaintiffs assert that, between December 2013 and September 2014, Emporio and Khan "stole" ten vehicles that plaintiffs cosigned to Emporio. (*Id.* ¶¶ 20-29, 34.) They allege that, after they secured loans against those assets, plaintiffs cosigned the vehicles to Emporio to effect their sale. (*E.g.*, *id*. ¶ 20(a)-(d).) Emporio and Khan then sold the vehicles to third-party purchasers, but they never informed plaintiffs of those transactions or remitted the sale proceeds to them; instead, Emporio and Khan

2

kept those funds for themselves. (*E.g.*, *id.* ¶ 20(e)-(f).)

Plaintiffs allege that TDAF financed the sale of the vehicles by Emporio without first determining that plaintiffs had liens on those automobiles, obtaining satisfaction of those liens, or securing the vehicle titles from plaintiffs. (*E.g.*, *id.* ¶ 20(g)-(h).) As a result, plaintiffs assert that they lost the security for the loans they made against those automobiles and were unable to collect on that debt. (*E.g.*, *id.* ¶ 20(i).)

With respect to their RICO claim, plaintiffs allege that defendant committed wire and mail fraud by "permit[ing] Khan, through Emporio, to sell the automobiles Khan stole through Emporio, by providing the financing to the purchasers of these stolen automobiles sold by Emporio." (*Id.* ¶¶ 36, 38.) They also contend that defendant, "through its funding of the purchase of the automobiles Emporio illegally sold in interstate and foreign commerce after having stolen these automobiles, conspired with Emporio to violate" RICO. (*Id.* ¶ 37.)

Specifically, plaintiffs assert that defendant "knowingly, intentionally and willfully permitted Emporio to avoid and circumvent Emporio's obligations under" its financing agreement with TDAF by, among other things, not securing the titles to the vehicles at issue or ascertaining whether plaintiffs had liens on those vehicles prior to financing their sale. (*Id.* ¶¶ 39-40.) Plaintiffs also claim that TDAF had an "economic incentive" to finance Emporio and Khan's theft of the vehicles because defendant profited from those loans, and defendant's employees were compensated by approving financing deals with Emporio. (*Id.* ¶¶ 41-44.) Through this conduct, defendant purportedly "aided and abetted Khan's and Emporio's fraudulent scheme"; "permitted Emporio and Khan to continue to stay in business"; and "controlled Emporio's affairs." (*Id.* ¶¶ 50-52.)

B. Procedural Background

Plaintiffs commenced this action on November 16, 2016. (ECF No. 1.) Defendant moved to dismiss on February 13, 2017 (ECF No. 15); plaintiffs filed their opposition on March 17, 2017 (ECF No. 20); and defendant replied on March 30, 2017 (ECF No. 21). The Court held oral argument on May 10, 2017 (ECF No. 22) and has fully considered the parties' submissions.

II. STANDARD OF REVIEW

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006); *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). "In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege a plausible set of facts sufficient 'to raise a right to relief above the speculative level.'" *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This standard does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

The Supreme Court clarified the appropriate pleading standard in *Ashcroft v. Iqbal*, setting forth a two-pronged approach for courts deciding a motion to dismiss. 556 U.S. 662 (2009). The Supreme Court instructed district courts to first "identify[] pleadings that, because they are no more than conclusions, are not entitled to the

3

assumption of truth." *Id.* at 679 (explaining that though "legal conclusions can provide the framework of a complaint, they must be supported by factual allegations"). Second, if a complaint contains "well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting and citing *Twombly*, 550 U.S. at 556-57 (internal citation omitted)).

The Court notes that in adjudicating a Rule 12(b)(6) motion, it is entitled to consider:

> (1) facts alleged in the complaint and documents attached to it or incorporated in it by reference, (2) documents 'integral' to the complaint and relied upon in it, even if not attached or incorporated by reference, (3) documents or information contained in defendant's motion papers if plaintiff has knowledge or possession of the material and relied on it in framing the complaint, (4) public disclosure documents required by law to be, and that have been, filed with the Securities and Exchange Commission, and (5) facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 356-57 (S.D.N.Y. 2003) (internal citations omitted), *aff'd in part and reversed in part on other grounds sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005), *cert. denied*, 546 U.S. 935 (2005); *see also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("[T]he district court . . . could have viewed [the documents] on the motion to dismiss because there was undisputed notice to plaintiffs of their contents and they were integral to plaintiffs' claim.").

III. DISCUSSION

Defendant moves to dismiss plaintiffs' substantive RICO claim for failure to state a plausible cause of action because plaintiffs have not adequately pled (1) that defendant conducted or participated in Emporio's affairs; (2) a closed- or open-ended pattern of racketeering activity; and (3) the underlying predicate acts of mail and wire fraud with the requisite particularity. In addition, defendant argues that the RICO conspiracy claim must be dismissed because plaintiffs have not plausibly alleged the existence of any agreement between defendant and Emporio or Khan, or that defendant knew of or intended to further their illicit conduct.

As set forth below, the Court agrees with each of these arguments and dismisses plaintiffs' RICO claims.[2] In addition, the

---

[2] Accordingly, the Court need not, and does not, address defendant's additional arguments that dismissal is warranted because, even assuming that plaintiffs have pled a plausible RICO claim, they have not alleged a ripe injury or a causal link between their losses and defendant's conduct. *See, e.g.*, *First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004) ("Because we agree with the District Court that [RICO] Counts Five and Six were insufficiently pled, we need not—and do not—reach the merits of the District Court's decisions regarding either ripeness, standing, or personal jurisdiction."); *Boritzer v. Calloway*, No. 10 CIV. 6264 JPO, 2013 WL 311013, at *13 (S.D.N.Y. Jan. 24, 2013) ("Here, as Plaintiffs have not adequately pleaded a RICO violation, the first element is not met. Accordingly,

4

Court declines, in its discretion, to exercise supplemental jurisdiction over plaintiffs' New York State law claims for lender liability and fraud, which it dismisses without prejudice. Finally, in an abundance of caution, it will permit plaintiffs to file an amended complaint.

A. RICO

1. Applicable Law

Under RICO, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." 18 U.S.C. § 1962(c). "When § 1962 is violated, in addition to criminal penalties, the RICO statutes also authorize civil lawsuits, which, if successful, can entitle a plaintiff to treble damages, costs, and attorney's fees." *DLJ Mortg. Capital, Inc. v. Kontogiannis*, 726 F. Supp. 2d 225, 236 (E.D.N.Y. 2010) (citing 18 U.S.C. § 1964(c)). Specifically, RICO provides a private cause of action for "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c).

"To establish a civil RICO claim [under 18 U.S.C. § 1964(c)], a plaintiff must allege '(1) conduct, (2) of an enterprise, (3) through a pattern (4) of racketeering activity,' as well as 'injury to business or property as a result of the RICO violation.'" *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) (quoting *Anatian v. Coutts Bank Ltd.*, 193 F.3d 85, 88 (2d Cir. 1999)). "The pattern of racketeering activity must consist of two or more predicate acts of racketeering." *Id.* (citing 18 U.S.C. § 1961(5)). Racketeering activity is defined as "any act which is indictable" under specified provisions of Title 18, including mail fraud, wire fraud, extortion, and bank fraud. 18 U.S.C. § 1961(1)(B). A RICO claim thus contains three principal elements: "(1) a violation of 18 U.S.C. § 1962; (2) injury to plaintiff's business or property; and (3) causation of the injury by the violation." *Sky Med. Supply Inc. v. SCS Support Claims Servs., Inc.*, 17 F. Supp. 3d 207, 222 (E.D.N.Y. 2014).

Courts have described civil RICO as "'an unusually potent weapon—the litigation equivalent of a thermonuclear device.'" *Katzman v. Victoria's Secret Catalogue*, 167 F.R.D. 649, 655 (S.D.N.Y. 1996) (quoting *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991)), *aff'd*, 113 F.3d 1229 (2d Cir. 1997). "Because the 'mere assertion of a RICO claim . . . has an almost inevitable stigmatizing effect on those named as defendants, . . . courts should strive to flush out frivolous RICO allegations at an early stage of the litigation.'" *Id.* (quoting *Figueroa Ruiz v. Alegria*, 896 F.2d 645, 650 (1st Cir. 1990)); *see also DLJ Mortg. Capital*, 726 F. Supp. 2d at 236. Indeed, although civil RICO may be a "potent weapon," plaintiffs wielding RICO almost always miss the mark. *See Gross v. Waywell*, 628 F. Supp. 2d 475, 479-83 (S.D.N.Y. 2009) (conducting survey of 145 civil RICO cases filed in the Southern District of New York from 2004 through 2007, and finding that all thirty-six cases resolved on the merits resulted in judgments against the plaintiffs, mostly at the motion to dismiss stage). Accordingly, courts have expressed skepticism toward civil RICO claims. *See,*

---

Plaintiffs lack standing due to their failure to plead a RICO violation. The Court does not reach the issues of injury or causation.").

*e.g.*, *DLJ Mortg. Capital*, 726 F. Supp. 2d at 236 ("[P]laintiffs have often been overzealous in pursuing RICO claims, flooding federal courts by dressing up run-of-the-mill fraud claims as RICO violations.").

Although civil RICO presents many hurdles for a plaintiff to overcome, the Supreme Court has also "made clear that it would not interpret civil RICO narrowly." *Attorney Gen. of Canada v. R.J. Reynolds Tobacco Holdings, Inc.*, 268 F.3d 103, 139 n.6 (2d Cir. 2001) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985)). In *Sedima*, the Supreme Court rejected an interpretation of civil RICO that would have confined its application to "mobsters and organized criminals." 473 U.S. at 499. Instead, the Court held: "The fact that RICO has been applied in situations not expressly anticipated by Congress does not demonstrate ambiguity. It demonstrates breadth." *Id.* (internal citation omitted); *see also Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 479 (2006) (Breyer, J., concurring in part and dissenting in part) ("RICO essentially seeks to prevent organized criminals from taking over or operating legitimate businesses. Its language, however, extends its scope well beyond those central purposes."). Thus, a court should not dismiss a civil RICO claim if the complaint adequately alleges all elements of such a claim, even if the alleged conduct is not a quintessential RICO activity.

2. Analysis

Here, plaintiffs have attempted to plead a substantive RICO claim with mail and wire fraud as the underlying predicate acts. (*See* Compl. ¶¶ 30-54.) However, the complaint fails to state a plausible cause of action because it does not adequately allege that defendant (1) conducted or participated in Emporio's affairs; (2) engaged in a closed- or open-ended pattern of racketeering; and (3) committed mail or wire fraud with the requisite particularity. The RICO conspiracy claim is also deficient because, in addition to failing to plead an underlying substantive violation of RICO, plaintiffs have not sufficiently asserted the existence of any agreement between defendant and Emporio or Khan, or that defendant knew of or intended to further their fraudulent scheme.

a. Conduct

A RICO enterprise "includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). Although RICO "does not specifically define the outer boundaries of the 'enterprise' concept," *Boyle v. United States,* 556 U.S. 938, 944 (2009), it is clear that "any legal entity may qualify as a RICO enterprise," *First Capital Asset Mgmt.*, 385 F.3d at 173.

However, "[f]or RICO purposes, simply establishing the presence of an enterprise is not enough. Plaintiffs must also allege that the defendants 'conducted or participated, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.'" *Id.* at 175-76 (quoting 18 U.S.C. § 1962(c)). The Supreme Court has interpreted this statutory language to mean that the RICO defendant must have participated "in the operation or management of the enterprise." *DeFalco v. Bernas*, 244 F.3d 286, 309 (2d Cir. 2001) (citing *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993)); *see, e.g.*, *First Capital Asset Mgmt.*, 385 F.3d at 176 (holding that "'one is liable under RICO only if he participated in the operation or management of the enterprise itself'" (quoting *Azrielli v. Cohen Law Offices*, 21 F.3d 512, 521 (2d Cir. 1994))). Under this standard, a person may not be held liable merely for taking directions and performing tasks that are "necessary and helpful to the

enterprise," or for providing "goods and services that ultimately benefit the enterprise." *U.S. Fire Ins. Co. v. United Limousine Serv., Inc.*, 303 F. Supp. 2d 432, 451-52 (S.D.N.Y. 2004) (citations omitted). Instead, "the RICO defendant must have played '*some* part in directing [the enterprise's] affairs.'" *First Capital Asset Mgmt.*, 385 F.3d at 176 (quoting *DeFalco*, 244 F.3d at 310) (brackets in original). "In this Circuit, the 'operation or management' test typically has proven to be a relatively low hurdle for plaintiffs to clear, especially at the pleading stage." *Id.* (citations omitted); *see, e.g.*, *AIU Ins. Co. v. Olmecs Med. Supply, Inc.*, No. 04-CV-2934 (ERK), 2005 WL 3710370, at * 8 (E.D.N.Y. Feb. 22, 2005) ("[W]here the role of the particular defendant in the RICO enterprise is unclear, plaintiffs may well be entitled to take discovery on this question.").

Here, the complaint alleges that "[b]ut for [defendant's] knowing, willful and intentional participation in funding the continued operations of a corrupt enterprise known as" Emporio and its principal Khan, "Emporio and Khan would not have been able to steal at least thirteen automobiles with a value of in excess of $1 million" from plaintiffs. (Compl. ¶ 1.) However, defendant argues that, at best, plaintiffs have asserted that TDAF simply lent money to Emporio and Khan to finance the transactions that resulted in plaintiffs' losses, and that the provision of a such a service does not constitute "conduct or participation" within the meaning of RICO. Plaintiffs respond that TDAF's standard financing agreement required dealers like Emporio to maintain demand deposit accounts at defendant's bank and further allege that defendant willfully allowed Emporio and Khan "to circumvent [TDAF]'s requirements and commercially reasonable lending practices" by financing Emporio's automobile sales without obtaining titles to the vehicles or determining whether there were pre-existing liens. (Pls.' Opp'n Br. at 15-16; Compl. ¶¶ 19-20.) In addition, plaintiffs have submitted two declarations with exhibits in support of their opposition to the instant motion that purportedly establish that (1) defendant "covered up Emporio's wrongdoing by misrepresentations" to individuals who had financial interests in two of the vehicles that Emporio sold; and (2) defendant continued to do business with Emporio even though Emporio's checks bounced. (Pl.'s Opp'n Br. at 15.)

The Court agrees with defendant. Even construing the complaint in a light most favorable to plaintiffs, their allegations establish that defendant "merely provide[d] professional services" to Emporio by entering into a financing agreement with that company and making loans to facilitate the sale of automobiles. *Sky Med.*, 17 F. Supp. 3d at 224. In contrast, there are no allegations that defendant directed or advised on Emporio and Khan's vehicle sales, communicated with customers on their behalf, or "had any control" over Emporio or Khan; instead, defendant "loaned money in an arms length commercial transaction" with those parties. *Berry v. Deutsche Bank Trust Co. Americas*, No. 07CIV.7634 (WHP), 2008 WL 4694968, at *6 (S.D.N.Y. Oct. 21, 2008), *aff'd*, 378 F. App'x 110 (2d Cir. 2010). Courts have routinely and correctly held that such a relationship does not qualify as "conducting or participating" in the affairs of a RICO enterprise, even when the defendant is aware of the enterprise's unlawful activity. *See Azrielli*, 21 F.3d at 521-22 (2d Cir. 1994) (holding that provision of legal services related to fraudulent real estate transaction was not management of RICO enterprise); *Abbott Labs. v. Adelphia Supply USA*, No. 15-CV-5826 (CBA) (LB), 2017 WL 57802, at *7 (E.D.N.Y. Jan. 4, 2017) ("Even assuming the truth of [the plaintiff's] conclusory allegations that the pharmacies

7

and defendants 'have a long-standing relationship,' no factual allegations suggest that that relationship was other than an arm's-length business relationship between a buyer and a seller. Courts reject such RICO allegations, in which the conduct alleged was taken only for the defendants' benefit, not a separate enterprise's."); *Berry*, 2008 WL 4694968, at *6 ("Lending money to an enterprise does not establish a role in 'directing the enterprise's affairs.'"), *aff'd*, 378 F. App'x 110; *Rosner v. Bank of China*, 528 F. Supp. 2d 419, 431 (S.D.N.Y. 2007) ("Rosner's sole allegation is that BoC provided banking services that aided in the perpetration of the fraudulent scheme. Regardless of how indispensable or essential such services may have been, rendering a professional service by itself does not qualify as participation in a RICO enterprise."); *Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison*, 955 F. Supp. 248, 254 (S.D.N.Y. 1997) ("[I]t is well established that the provision of professional services by outsiders, such as accountants, to a racketeering enterprise, is insufficient to satisfy the participation requirement of RICO, since participation requires some part in directing the affairs of the enterprise itself."); *Indus. Bank of Latvia v. Baltic Fin. Corp.*, No. 93-CV-9032 (LLS), 1994 WL 286162, at *3 (S.D.N.Y. June 27, 1994) (dismissing RICO claim against bank and individual officers on basis that providing "banking services—even with knowledge of the fraud—is not enough to state a claim under § 1962(c)").

As the Third Circuit observed in a RICO case concerning real estate financing,

> to hold that merely because a lender requires security and approval of aspects of construction, [that] the lender thereby takes 'control' of the project . . . would wreak havoc on the lending industry, for any lender who reasonably wished to protect itself would be forced to run the risk of being sued for the unknown fraudulent acts of its borrowers.

*Dongelewicz v. PNC Bank Nat'l Ass'n.*, 104 F. App'x 811, 817 (3d Cir. 2004). Plaintiffs' expansive theory of liability would similarly ensnare any individual or company that loans money to a corrupt enterprise. Capital is the lifeblood of many businesses, but the important role played by financiers does not, without more, constitute "conduct" within the meaning of RICO. *See, e.g.*, *Indus. Bank of Latvia*, 1994 WL 286162, at *3.

Plaintiffs' extra-pleading declarations do not remedy this defect. As an initial matter, the Court cannot consider evidentiary submissions in deciding a Rule 12(b)(6) motion to dismiss where, as here, they are not integral to the complaint or incorporated by reference. *See In re Merrill Lynch*, 273 F. Supp. 2d at 356-57; *see also Glob. Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156-57 (2d Cir. 2006). The Court, in its discretion, also declines to convert the instant motion into a motion for summary judgment. "Federal courts have 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings' offered in conjunction with a Rule 12(b)(6) motion, and thus complete discretion in determining whether to convert the motion to one for summary judgment." *Carione v. United States*, 368 F. Supp. 2d 186, 191 (E.D.N.Y. 2005) (citations omitted).

In any case, the Court notes that nothing in plaintiffs' declarations or the exhibits thereto establish that defendant conducted or participated in Emporio's affairs during the scheme at issue. For instance, the misrepresentations that TDAF allegedly made to individuals who had ownership interests in vehicles sold by Emporio occurred after the sales of those automobiles;

8

in other words, that purported fraud did not enable or further Emporio and Khan's theft of cars that plaintiffs had loaned against. *Cf. Sky Med.*, 17 F. Supp. 3d at 225; *AIU Ins.*, 2005 WL 3710370, at *8-9 (holding that complaint adequately pleaded participation of defendant-doctors in conduct of RICO enterprise concerning insurance fraud, where complaint alleged that doctors had provided misleading prescriptions that "facilitated the submission of fraudulent claims to plaintiffs"); *U.S. Fire Ins.*, 303 F. Supp. 2d at 453 (holding that defendants were "key participants" in conducting RICO enterprise "by making critical misrepresentations, creating false documents, and . . . serving as the point of communication"). Finally, given the other insoluble deficiencies in the complaint discussed *infra*, plaintiffs are not entitled to additional discovery on this aspect of their RICO claim. *Dotson v. Griesa*, 398 F.3d 156, 159 (2d Cir. 2005) ("[A] plaintiff is not entitled to discovery if his pleadings are fatally and incurably defective as a matter of law."); *cf. Sky Med.*, 17 F. Supp. 3d at 225.

In sum, because plaintiffs have asserted that TDAF only lent money to Emporio, there are no allegations in the complaint that defendant played "*some* part in directing [Emporio'] affairs." *First Capital Asset Mgmt.*, 385 F.3d at 176. Accordingly, plaintiffs' RICO claim fails.[3]

    b. Pattern

Even assuming that plaintiffs had met the conduct element of RICO, they have nevertheless failed to set forth allegations that could plausibly satisfy the continuity criterion. RICO requires plaintiffs to "plead at least two predicate acts, show that the predicate acts are related, and that they amount to, or pose a threat of, continuing criminal activity." *Schlaifer Nance & Co. v. Estate of Warhol*, 119 F.3d 91, 97 (2d Cir. 1997) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)); *see* 18 U.S.C. §§ 1961(5), 1962(c). The predicate acts must have been committed within ten years of each other. 18 U.S.C. § 1961(5). "Predicate acts are 'related' for RICO purposes when they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.'" *Schlaifer Nance & Co.*, 119 F.3d at 97 (quoting *H.J. Inc.*, 492 U.S. at 240). As to the threat of continued criminal activity, "a plaintiff in a RICO action must allege either an 'open-ended' pattern of racketeering activity (*i.e.*, past criminal conduct coupled with a threat of future criminal conduct) or a 'closed-ended' pattern of racketeering activity (*i.e.*, past criminal conduct 'extending over a substantial period of time')." *GICC Capital Corp. v. Tech. Fin. Grp., Inc.*, 67 F.3d 463, 466 (2d Cir. 1995). The Supreme Court has explained the continuity requirement as follows:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition. . . . A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct. Often a RICO action will be brought before

---

[3] As a result, the Court need not, and does not, address defendant's argument that plaintiffs have not alleged facts sufficient to establish that Emporio is an enterprise for RICO purposes.

9

continuity can be established in this way. In such cases, liability depends on whether the *threat* of continuity is demonstrated.

*H.J. Inc.*, 492 U.S. at 241-42.

"To satisfy open-ended continuity, the plaintiff . . . must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A. v. Windsor Plumbing Supply Co.*, 187 F.3d 229, 242 (2d Cir. 1999). Alternatively, to establish a "closed period of repeated conduct" sufficient to satisfy the continuity requirement, *H.J. Inc.*, 492 U.S. at 241, "'a plaintiff must provide some basis for a court to conclude that defendants' activities were neither isolated nor sporadic,'" and that defendants engaged in such activity for a substantial period of time, *DeFalco*, 244 F.3d at 321 (quoting *GICC Capital*, 67 F.3d at 467).

Further, with respect to closed-ended continuity, "[p]redicate acts extending over a few weeks or months . . . do not satisfy this requirement." *Cofacredit*, 187 F.3d at 242 (quoting *H.J. Inc.*, 492 U.S. at 242). In calculating the duration of the pattern of racketeering activity, actions that do not constitute predicate racketeering activity are not included; rather, the duration "is measured by the RICO predicate acts the defendants commit." *DeFalco*, 244 F.3d at 321 (citing *Cofacredit*, 187 F.3d at 243; *GICC Capital*, 67 F.3d at 467). Notably, "[s]ince the Supreme Court decided *H.J. Inc.*, [the Second Circuit] has never held a period of less than two years to constitute a 'substantial period of time'" for purposes of closed-ended continuity. *DeFalco*, 244 F.3d at 321. Moreover, "[w]hile closed ended continuity is primarily concerned with the time period of the activities, the court also considers factors such as the 'number and variety of predicate acts, the number of both participants and victims, and the presence of separate schemes' as relevant when determining whether closed ended continuity exists." *SKS Constructors, Inc. v. Drinkwine*, 458 F. Supp. 2d 68, 78 (E.D.N.Y. 2006) (quoting *DeFalco*, 244 F.3d at 321).

In this case, plaintiffs do not argue that open-ended continuity exists, and given that Emporio's business is apparently defunct and Khan is currently a fugitive (Compl. ¶¶ 6-7), there is no "alleged threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit*, 187 F.3d at 242. Plaintiffs also admit that "the Complaint and the exhibits . . . allege a pattern of racketeering extending to *just under one year*," but they argue that "the 'two year' requirement in order to establish closed-ended continuity is not a bright-line rule." (Pls.' Opp'n Br. at 17 (emphasis added) (citing *Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008)). In addition, plaintiffs acknowledged at oral argument that even a liberal reading of the complaint demonstrates a racketeering period of only 10 months, and that there is accordingly no precedent for finding closed-ended continuity here. Notwithstanding the absence of any case authority, plaintiffs urge the Court to adopt a generous reading of the pattern element and overlook the two-year touchstone, suggesting that discovery may reveal "additional predicate acts which by their nature were designed to prevent detection and prosecution . . . ." (Pls.' Opp'n Br. at 17.)

The Court declines plaintiffs' invitation to break from this Circuit's clear and consistent case law. In *Spool*, which plaintiffs cite in their brief, the Second Circuit explicitly cautioned that "it will be rare that conduct persisting for a shorter period of time [than two years] establishes

closed-ended continuity, particularly where, as here and as in *GICC Capital Corp.*, '[t]he activities alleged involved only a handful of participants' and do not involve a 'complex, multi-faceted conspiracy.'" 520 F.3d 178 at 184 (citing 67 F.3d at 468). Thus, in that case, the Court found that a "sixteen-month period of time [was] insufficient to establish closed-ended continuity—particularly in the absence of separate schemes or large numbers of participants and victims." *Id.* (citing *DeFalco*, 244 F.3d at 322). As a result, "[c]ourts have refused to find a RICO violation in cases like this, where the plaintiffs 'attempt to transform [a] single scheme of limited duration into a RICO enterprise.'" *Lynch v. Amoruso*, No. 16-CV-1270 (AJN), 2017 WL 543232, at *6 (S.D.N.Y. Feb. 8, 2017) (quoting *Ozbakir v. Scotti*, 764 F. Supp. 2d 556, 570 (W.D.N.Y. 2011) (citing *Stein v. N.Y. Stair Cushion Co., Inc.*, No. 04-CV-4741 DRHETB, 2006 WL 319300, at *8 (E.D.N.Y. Feb. 10, 2006) (dismissing RICO cause of action where plaintiffs alleged "a single scheme of narrow scope, including one victim and a limited number of related participants"); *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 372 (E.D.N.Y. 2002) ("Courts in the Second Circuit have generally held that where the conduct at issue involves a limited number of perpetrators and victims and a limited goal, the conduct is lacking in closed-ended continuity. This is the case even when the scheme's duration exceeds one year." (collecting cases)).

Likewise, the scheme at issue here (1) lasted less than a year; (2) involved two participants (*i.e.*, Khan and his company Emporio); (3) affected a relatively small number of victims; and (4) was narrow in scope because it had one facet—fraudulent automobile transactions.[4] Under these circumstances, the Court will not depart from two-year standard for closed-ended continuity. Moreover, in "the absence of any prima facie showing" of a cognizable pattern of racketeering activity, the Court will not "subject defendant[] to the burden and expense of discovery (which likely would result in a fishing expedition)." *Norvel Ltd. v. Ulstein Propeller AS*, 161 F. Supp. 2d 190, 208 (S.D.N.Y. 2001).

In sum, plaintiffs have failed to state a plausible claim because there are no allegations that would allow plaintiffs to establish either closed- or open-ended continuity so as to satisfy the pattern prong of their RICO claim. Thus, for this independent ground, the complaint does not plead a cause of action under 18 U.S.C. § 1962(c).

c. Racketeering

Plaintiffs' RICO claim also fails for a third reason—namely, the complaint is not sufficiently particularized. As predicate acts for their RICO claim, plaintiffs allege that defendant engaged in mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343.[5] (*See* Compl. ¶¶ 36, 46.) When alleging fraudulent activities as predicate acts for a RICO claim, a plaintiff must satisfy the particularity requirements of Federal Rule of Civil Procedure 9(b). *Moore v. PaineWebber, Inc.*, 189 F.3d 165, 172-73 (2d Cir. 1999). Accordingly, a RICO plaintiff

---

[4] Although this does not bear on the Court's analysis, the criminal indictment against Khan also alleges a 10-month period of unlawful conduct and charges him with wire fraud—not a RICO violation. (*See* Compl. Exh. A.)

[5] "The elements of wire fraud under 18 U.S.C. § 1343 are (i) a scheme to defraud (ii) to get money or property, (iii) furthered by the use of interstate wires." *Tymoshenko v. Firtash*, 57 F. Supp. 3d 311, 321 (S.D.N.Y. 2014) (quoting *United States v. Pierce*, 224 F.3d 158, 165 (2d Cir. 2000)). "The elements of mail fraud under 18 U.S.C. § 1341 are identical, except that mail fraud must be furthered by use of the mails." *Id.*

must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Anatian*, 193 F.3d at 88. If "there are multiple defendants involved, the plaintiff must connect the allegations of fraud to each individual defendant." *Colony at Holbrook, Inc. v. Strata G.C., Inc.*, 928 F. Supp. 1224, 1231 (E.D.N.Y. 1996). For example, in *Moore*, the court held that a complaint met this heightened pleading standard where it "contain[ed] a chart listing twelve different mailings said to contain fraudulent representations, along with the dates of these mailings and cross-references to the paragraphs of the complaint in which the mailings [were] further discussed." 189 F.3d at 173; *see also ABF Capital Mgmt. v. Askin Capital Mgmt., L.P.*, 957 F. Supp. 1308, 1326 (S.D.N.Y. 1997) (holding that complaint met particularity requirement where, for each defendant, the "[p]laintiffs identif[ied] and quote[d] from specific written materials they allege[d] were distributed to and relied upon by them, and describe[d] how these materials were false or failed to disclose material information"). By contrast, in *Colony at Holbrook*, 928 F. Supp. at 1231, the court held that a complaint did not meet Rule 9(b)'s heightened pleading standard because it did not include "statements setting forth the content, date, or place of any alleged misrepresentations, and the identity of the persons making them." *Id.* (brackets omitted). Instead, the complaint "contain[ed] sweeping and general allegations of mail and wire fraud directed at all the defendants rather than connecting the alleged fraud to the individual defendants." *Id.*; *see also McGee v. State Farm Mut. Auto. Ins. Co.*, No. 08-CV-392 FB CLP, 2009 WL 2132439, at *5 (E.D.N.Y. July 10, 2009) (holding that a plaintiff failed to plead fraud with particularity where he "loosely allege[d] throughout his complaint that the defendants contacted each other by means of the mails and/or the wires, without specifying precise methods of communication" or identifying "any specific fraudulent statement").

Further, although a plaintiff may "allege fraudulent intent generally" under Rule 9(b), he still "must provide some minimal factual basis for conclusory allegations of scienter that give rise to a strong inference of fraudulent intent." *Powers v. British Vita, P.L.C.*, 57 F.3d 176, 184 (2d Cir. 1995); *see also Moore*, 189 F.3d at 173. A complaint satisfies this standard by either (1) "alleg[ing] a motive for committing fraud and a clear opportunity for doing so" or (2) "identifying circumstances indicating conscious behavior by the defendant." *Powers*, 57 F.3d at 184. Under the "motive and opportunity" approach, "[a]lthough the desire to enhance income may motivate a person to commit fraud, allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)." *ABF Capital*, 957 F. Supp. at 1327 (citing *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1130 (2d Cir. 1994)). Indeed, "a generalized profit motive that could be imputed to any company . . . has been consistently rejected as a basis for inferring fraudulent intent." *Brookdale Univ. Hosp. & Med. Ctr., Inc. v. Health Ins. Plan of Greater N.Y.*, No. 07-CV-1471 RRM/LB, 2009 WL 928718, at *6 (E.D.N.Y. Mar. 31, 2009) (collecting cases).

Meanwhile, under the "conscious behavior" approach, "the strength of the circumstantial evidence must be greater." *ABF Capital*, 957 F. Supp. at 1326 (citing *Powers*, 57 F.3d at 184). In *ABF Capital*, for example, a plaintiff adequately alleged "conscious behavior" indicative of fraud where the facts showed that the defendant "represented that it had reduced the art of valuing and modeling [collateralized

12

mortgage obligations] to a 'proprietary, quantitative' science, when in fact it was relying on intuition and pressure from [its] Brokers." *Id.* at 1327. On the other hand, in *Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd.*, 85 F. Supp. 2d 282, 298 (S.D.N.Y. 2000), *aff'd*, 2 F. App'x 109 (2d Cir. 2001), the court concluded that a plaintiff did not allege "conscious behavior" that sufficiently alleged fraudulent intent where the "facts [in the complaint could] only lead to the inference that [the defendant] and its principals successfully did business with their long-time business contacts," who had allegedly committed fraud.

Here, plaintiffs have not adequately particularized their fraud allegations. Like the complaint in *Colony at Holbrook*, the complaint does not identify any statements made by defendant that were fraudulent, much less the dates and the times those statements were made or the identities of the recipients. *See Colony at Holbrook*, 928 F. Supp. at 1231; *see also McGee*, 2009 WL 2132439, at *5. Instead, it merely asserts that defendant,

> together with Khan and Emporio, made use of the mail and the wires in interstate and foreign commerce, in the following (by way of example) manner:
>
> a. documents reflecting the consignment of the automobiles by the Plaintiffs to Emporio was [sic] transmitted (i) by electronic mail; (ii) by fax, (iii) through the U.S. Mail; (iv) by private commercial carrier;
>
> b. documents generated as part of, and in connection with the financing of the Lamborghini and the Aston Martin [*i.e.*, two of the allegedly stolen cars] was [sic] transmitted (i) by electronic mail; (ii) by fax, (iii) through the U.S. Mail; (iv) by private commercial carrier;
>
> c. the actual funding of the purchase price for the purchase of the Lamborghini and the Aston Martin was effectuated by (i) wire transfer or (ii) by commercial draft or like commercial instrument which would have then been transmitted (i) through the U.S. Mail or (ii) by private commercial carrier . . . .

(Compl. ¶ 46.)

These allegations are a far cry from *Moore*'s highly detailed chart that laid out with specificity the allegedly fraudulent statements. 189 F.3d at 173. Instead, they are much closer to the "sweeping and general allegations of mail and wire fraud" that proved insufficient to meet Rule 9(b)'s heightened pleading standard in *Colony at Holbrook*. 928 F. Supp. at 1231. More to the point, the complaint does not "specify the statements that the plaintiff contends were fraudulent . . . state where and when the statements were made, and . . . explain why the statements were fraudulent." *Anatian*, 193 F.3d at 88; *see also Colony at Holbrook*, 928 F. Supp. at 1231; *McGee*, 2009 WL 2132439, at *5. Even assuming the truth of plaintiffs' core premise—that defendant knowingly financed unlawful automobile transactions carried out by Emporio and Khan—plaintiffs have not asserted that defendant made any misrepresentations at all, let alone any misrepresentations *to plaintiffs*. Indeed, there are no allegations that TDAF had any relationship or contact with plaintiffs. On the contrary, the complaint explicitly acknowledges that defendant provided funding for third-party transactions. (Compl. ¶¶ 15-17.)

To the extent that plaintiffs argue that defendant committed fraud by failing to

13

conduct "commercially reasonable due diligence" before entering into a financing arrangement with Emporio; by allowing Emporio to circumvent certain provisions of its financing agreement with TDAF; or by failing to contact plaintiffs to secure title to the vehicles or to satisfy plaintiffs' outstanding liens (*see id.* ¶¶ 38-40), such allegations only evince a failure to comply with TDAF's internal compliance procedures. Absent any misrepresentation to plaintiffs, such conduct does not constitute fraud. *See de Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293, 1311 (2d Cir. 2002) (citing *Farmland Indus. v. Frazier-Parrott Commodities, Inc.*, 871 F.2d 1402, 1407 (8th Cir. 1989) ("[F]ailure to follow [internal policies and procedures] will not give rise to a cause of action in the absence of independent facts establishing fraud.")). Moreover, to state a claim for wire or mail fraud based on a material omission of fact, defendant must owe a duty to plaintiffs. *See Katzman*, 167 F.R.D. at 656 ("An omission of a material fact can constitute fraud under RICO if either there exists a duty to disclose the information or the defendant makes statements of half-truths or affirmative misrepresentations."), *aff'd*, 113 F.3d 1229. Plaintiffs have not identified any duty owed to them by defendant under federal or state law, *see United States v. Margiotta*, 688 F.2d 108, 124 (2d Cir. 1982) (noting that state law is one possible source of a duty to disclose for purposes of the federal mail fraud statute), and "[a]bsent the existence of any such duty to disclose, a [RICO] fraud claim premised on a material omission must fail," *Katzman*, 167 F.R.D. at 656.

In any event, even if plaintiffs had specified particular fraudulent statements, identified the speaker, outlined the time and place they occurred, and explained why they were fraudulent, *see Anatian*, 193 F.3d at 88, the complaint does not set forth facts "that give rise to a strong inference of fraudulent intent," *Powers*, 57 F.3d at 184. The complaint contends that TDAF had an "economic incentive to permit Emporio to avoid and circumvent Emporio's obligations" under its financing agreement with defendant because both TDAF and its employees "profited" from financing Emporio's vehicle transactions. (Compl. ¶¶ 41-44.) However, as noted, under the "motive and opportunity" approach to the fraudulent intent requirement, "[a]lthough the desire to enhance income may motivate a person to commit fraud, allegations that a defendant stands to gain economically from fraud do not satisfy the heightened pleading requirements of Rule 9(b)." *ABF Capital*, 957 F. Supp. at 1327. Here, "[t]he only 'motive' ascribed to [TDAF] is a generalized profit motive that could be imputed to any company, and thus has been consistently rejected as a basis for inferring fraudulent intent."[6] *Brookdale*, 2009 WL 928718, at *6 (citing *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 268 (2d Cir. 1996)); *see also Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (affirming dismissal of fraud claim because complaint simply "couple[d] a factual statement with a conclusory allegation of fraudulent intent," and these "conclusory allegations—that Defendants 'knew but concealed' some things, or 'knew or were reckless in not knowing' other things—do not satisfy the requirements of Rule 9(b)").

Nor does the complaint allege "circumstances indicating conscious

---

[6] Defendant asserts that it "was also victimized by Emporio's scheme and thefts because TDAF too lost money and was deprived of security in the collateral since Emporio did not provide title to the purchasers of the" stolen vehicles. (Def.'s Mot. Br., ECF No. 16, at 13.) However, that contention presents an issue of fact that cannot be resolved on a 12(b)(6) motion to dismiss. *See FragranceNet.com, Inc. v. Les Parfums, Inc.*, 672 F. Supp. 2d 328, 333 (E.D.N.Y. 2009).

behavior by the defendant" showing fraudulent intent. *Powers*, 57 F.3d at 184. Plaintiffs asserted at oral argument that TDAF must have been privy to Emporio and Khan's scheme given the number of fraudulent transactions that defendant financed. Such supposition does not, as a matter of law, support scienter for RICO purposes. *See Odyssey*, 85 F. Supp. 2d at 298 ("Plaintiff must allege more than that defendants had worked together previously to create an inference of the fraudulent intent to enter into a conspiracy against this particular plaintiff."); *Gmurzynska v. Hutton*, 257 F. Supp. 2d 621, 630 (S.D.N.Y. 2003) ("[M]ere allegations that Defendants knew one another, or had prior relationships unrelated to the wrongful acts alleged in the Complaint, are insufficient, standing alone, to set forth a conspiracy claim."), *aff'd*, 355 F.3d 206 (2d Cir. 2004).

Finally, insofar as plaintiffs rely on the declarations they submitted with their opposition to bolster their complaint, the Court, in its discretion declines to covert this motion into one for summary judgment. *See Carione*, 368 F. Supp. 2d at 191. In addition, as discussed above, plaintiffs' supplemental filings only allege misrepresentations made by TDAF to *third parties*—not to plaintiffs— and speculate as to whether discovery in this action may show that TDAF knew of Emporio and Khan's fraud. (*See, e.g.*, Decl. of Richard Heptig, ECF No. 20-2, at ¶ 12 ("For some reason, the failure to receive new titles and liens appears to have occurred over and over again with the Defendant's auto loans. . . . Discovery in this litigation . . . should be quite revealing. In particular, if discovery reveals that no titles were received by the Defendant . . . it could be evidence of fraud.").) Thus, even were the Court to consider plaintiffs' extra-pleading evidence, it would still find that plaintiffs have not sufficiently particularized their wire and mail fraud claims.

In sum, even assuming that the complaint "set[] forth the dates, locations, senders and recipient of the allegedly fraudulent communications, its assertions as to their contents and the reason each communication was fraudulent are conclusory." *Knoll v. Schectman*, 275 F. App'x 50, 51 (2d Cir. 2008). Further, plaintiffs' general contention that TDAF "made use of the mail and the wires" in furtherance of Emporio and Khan's fraud and had an "economic incentive" to conspire with Emporio and Khan (Compl. ¶¶ 41, 46) are "the kind of conclusory allegations that Rule 9(b) is meant to dissuade," *Knoll*, 275 F. App'x at 51. "While courts have made an exception to the particularity requirements and have allowed 'allegations [to] be based on information and belief when facts are peculiarly within the opposing party's knowledge,' this exception 'must not be mistaken for license to base claims of fraud on speculation and conclusory allegations,' especially in the context of RICO claims." *Purchase Real Estate Grp. Inc. v. Jones*, No. 05 CIV. 10859, 2010 WL 3377504, at *8 (S.D.N.Y. Aug. 24, 2010) (quoting *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990)). Thus, for these reasons, plaintiffs have failed to plead their predicate mail and wire fraud claims with particularity and cannot state a cause of action under RICO. *See Town of Islip v. Datre*, --- F.3d ---, No. 16-CV-2156 (JFB), 2017 WL 1157188, at *13 (E.D.N.Y. Mar. 28, 2017).

### d. Conspiracy

In the absence of any viable underlying 18 U.S.C. § 1962(c) claim, plaintiffs' RICO conspiracy claim pursuant to 18 U.S.C. § 1962(d) must also fail. *See First Capital Asset Mgmt.*, 385 F.3d at 182 ("[B]ecause Plaintiffs did not adequately allege a

substantive violation of RICO . . . the District Court properly dismissed Count Six, which alleged a RICO conspiracy in violation of 18 U.S.C. § 1962(d)."); *Abbott Labs.*, 2017 WL 57802, at *9 (dismissing RICO conspiracy claim "because its underlying RICO claims [were] deficient"). However, assuming *arguendo* that plaintiffs had a plausible substantive RICO claim, their "conspiracy claim also fails for a second reason: [They have] made no nonconclusory allegations about an agreement." *Abbott Labs.*, 2017 WL 57802, at *9.

"To establish a RICO conspiracy claim pursuant to § 1962(d), a plaintiff must demonstrate that each defendant 'knew about and agreed to facilitate' a pattern of racketeering activity." *Cont'l Petroleum Corp. v. Corp. Funding Partners, LLC*, No. 11 CIV. 7801 PAE, 2012 WL 1231775, at *8 (S.D.N.Y. Apr. 12, 2012) (quoting *Baisch v. Gallina*, 346 F.3d 366, 377 (2d Cir. 2003)). Accordingly, "the Second Circuit has instructed that a plaintiff must prove that (i) the defendants agreed to form and associate themselves with a RICO enterprise; (ii) the defendants agreed to commit two predicate acts in furtherance of a pattern of racketeering activity in connection with the enterprise; and (iii) if the agreed-upon predicate acts had been carried out, they would have constituted a pattern of racketeering activity." *Elsevier, Inc. v. Grossman*, No. 12-CV-5121 (KPF), 2013 WL 6331839, at *11 (S.D.N.Y. Dec. 5, 2013) (citing *Cofacredit*, 187 F.3d at 244-45). "Because the core of a RICO civil conspiracy is an agreement to commit predicate acts, a RICO civil conspiracy complaint, at the very least, must allege specifically such an agreement." *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir. 1990)).

Although a plaintiff is not subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b) in pleading a RICO conspiracy, *see id.* at 26 n.4, a RICO conspiracy claim "should be more than a conclusory add-on at the end of a complaint." *FD Prop. Holding, Inc. v. U.S. Traffic Corp.*, 206 F. Supp. 2d 362, 373 (E.D.N.Y. 2002) (citations omitted); *see, e.g.*, *4 K & D Corp. v. Concierge Auctions, LLC*, 2 F. Supp. 3d 525, 544-45 (S.D.N.Y. 2014) (dismissing RICO conspiracy claim where plaintiffs alleged "no facts to show specifically that the defendants had any 'meeting of the minds' in the alleged violations").

Here, plaintiffs have only summarily alleged that there was an illicit agreement between TDAF and Emporio and Khan.[7] (*See, e.g.*, Compl. ¶ 37 ("Defendant, through its funding of the purchase of the automobiles Emporio illegally sold in interstate and foreign commerce after having stolen these automobiles, conspired with Emporio to violate 18 U.S.C. §1962(c) . . . .")) This is insufficient to state a RICO conspiracy claim. *See, e.g.*, *Abbott Labs.*, 2017 WL 57802, at *9; *4 K & D Corp.*, 2 F. Supp. 3d at 544-45. Further, as discussed *supra*, plaintiffs have not sufficiently asserted that TDAF knew of or had an economic incentive to engage in Emporio's scheme, but even were that so, the "mere knowledge of the scheme . . . coupled with personal benefit, is not enough to impose liability for a RICO conspiracy." *Congregacion de la Mision Provincia de Venezuela v. Curi*, 978 F. Supp. 435, 451 (E.D.N.Y. 1997).

For these reasons, plaintiffs' RICO conspiracy claim, like their substantive claim, fails to state a cause of action.

---

[7] Although plaintiffs assert that TDAF signed a financing agreement between TDAF and Emporio, such a contract—assuming its existence—is not evidence that TDAF and Emporio agreed to violate RICO.

B. State Law Claims

Plaintiffs also allege claims for lender liability and fraud under New York law. However, having determined that plaintiffs' federal claims do not survive defendant's motion to dismiss, the Court concludes that retaining jurisdiction over any state law claims is unwarranted. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "In the interest of comity, the Second Circuit instructs that 'absent exceptional circumstances,' where federal claims can be disposed of pursuant to Rule 12(b)(6) or summary judgment grounds, courts should 'abstain from exercising pendent jurisdiction.'" *Birch v. Pioneer Credit Recovery, Inc.*, No. 06-CV-6497T, 2007 WL 1703914, at *5 (W.D.N.Y. June 8, 2007) (quoting *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2d Cir. 1986)).

Therefore, in the instant case, the Court, in its discretion, "'decline[s] to exercise supplemental jurisdiction'" over plaintiffs' state law claims because "it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. N.Y.-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)); *see also Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) ("We have already found that the district court lacks subject matter jurisdiction over appellants' federal claims. It would thus be clearly inappropriate for the district court to retain jurisdiction over the state law claims when there is no basis for supplemental jurisdiction."); *Karmel v. Claiborne, Inc.*, No. 99-CV-3608 (WK), 2002 WL 1561126, at *4 (S.D.N.Y. July 15, 2002) ("Where a court is reluctant to exercise supplemental jurisdiction because of one of the reasons put forth by § 1367(c), or when the interests of judicial economy, convenience, comity and fairness to litigants are not violated by refusing to entertain matters of state law, it should decline supplemental jurisdiction and allow the plaintiff to decide whether or not to pursue the matter in state court.").

Accordingly, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to retain jurisdiction over the remaining state law claims against defendant given the absence of any federal claim that survives the motion to dismiss, and it dismisses plaintiffs' lender liability and fraud claims without prejudice.[8]

C. Leave to Amend

Plaintiffs have requested leave to amend their complaint in the event that the Court dismisses any of their claims. (Pls.' Opp'n Br. at 28.) Federal Rule of Civil Procedure 15(a) provides that a party shall be given leave to amend "when justice so requires." Fed. R. Civ. P. 15(a). "Leave to amend should be freely granted, but the district court has the discretion to deny leave if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *Jin v. Metro. Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002); *see Local 802, Assoc. Musicians of Greater N.Y. v. Parker Meridien Hotel*, 145 F.3d 85, 89 (2d Cir. 1998) (finding that leave to amend may be denied based upon the "futility of amendment"). As to futility, "leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, *i.e.*, if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir.

---

[8] If plaintiffs file an amended complaint and state a plausible federal claim, the Court will reconsider the supplemental jurisdiction issue.

2001) (citing *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991)).

It is unclear to the Court that plaintiffs can remedy the pleading deficiencies discussed above. In particular, plaintiffs appear unable to allege a closed- or open-ended pattern of racketeering. However, in an abundance of caution, the Court will grant plaintiffs leave to amend their complaint.

IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss plaintiffs' RICO claims and declines, in its discretion, to exercise supplemental jurisdiction over plaintiffs' state law claims for lender liability and fraud, which it dismisses without prejudice. The Court, in an abundance of caution, grants plaintiffs leave to amend, and any amended complaint must be filed within thirty (30) days of this Memorandum and Order.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: June 16, 2017
Central Islip, NY

\*\*\*

Plaintiffs are represented by Randy Scott Zelin of Randy Scott Zelin P.C., 110 East 59th Street, 22nd Floor, New York, New York 10022. Defendant is represented by Alexander D. Bono, Kevin P. Potere, and Michael S. Zullo of Duane Morris LLP, 30 South 17th Street, Philadelphia, Pennsylvania 19103.